IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF


        v.                        NO: 2:09-CR-20034-1


DONNELL LE-RON ALSTON                                       DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Donnell Le-Ron Alston (Alston) is charged with one count of knowingly possessing with intent to distribute more than 50 grams of a mixture or substance containing cocain base in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and one count of knowingly possessing with intent to distribute cocaine in violation of Title 21 U.S.C. §§ 841(a)(1). The case is scheduled for trial on September 29, 2009.

Defendant filed a motion and an amended motion to suppress evidence of any contraband seized as a result of the detention of defendant and search of a hotel room and a statement allegedly made by defendant. (Doc. 15 and 18). The motions were referred to the undersigned. (Doc. 16 and 20). A hearing was conducted on September 24, 2009.

**Facts:**

On December 4, 2008, Alston, was released from the Arkansas Department of Corrections on parole to Sebastian County after having served time on a 4 year sentence for Conspiracy to Possess Cocaine with Intent Deliver occurring on April 9, 2008, in Sebastian County, Arkansas. (Plaintiff's Response, Doc. 22). Prior to being released on parole, Alston

-1-

signed a document setting forth the conditions of his release on parole and acknowledging that he had read the conditions of release and would comply with all the conditions. During Alston's initial intake at the parole office, Parole Officer Frank Dike again reviewed these conditions of release with Alston, provided Alston with a copy of the conditions, and verified that Alston understood the conditions of release. Alston had been on parole previously and had signed and acknowledged these same release conditions.

Release condition 3 provided that Alston would obtain prior approval from his supervising officer to change his place of residence or to stay away from his approved residence overnight. Release condition 6 provided that Alston would not sell, deliver, possess, or use controlled substances except as prescribed by a physician. Release condition 7 provided that Alston would not associate with convicted felons or person who are engaged in criminal activity. Release condition10 provided that Alston would submit his person, place of residence, and motor vehicles to search and seizure at anytime, day or night, with or without a search warrant, by any Department of Community Correction Officer.

Officer Robie testified that he is a parole officer with the Arkansas Department of Community Correction.  On April 22, 2009 he received information from the Fort Smith Police Department that a probationer under his supervision, David O'Terry, was at the Candlewood Suites motel in Fort Smith, Arkansas, in possession of and selling drugs. O'Terry was already in violation of his probation for failure to report. Officer Robie and the other officers conducted surveillance of the motel and observed O'Terry coming and going from the motel in a manner consistent with the information that he was selling drugs. When Mr. O'Terry was approached by the officers he fled officers but was eventually arrested and found to be in possession of a

-2-

large amount of methamphetamine and cash.  Mr. O'Terry was arrested and made a statement that he had gotten the drugs from "DA".in room 416.

Officer Robie testified that he and Officer Lawson discussed who "DA" might be and the only person they could think of was Donnell Alston.  Robie testified that Donnell Alston had been on parole in the past in his office on a drug related conviction (See Government's Exhibit 2 & 3) and that he had been released from the Department of Correction on December 4, 2008 and was currently on parole.  At the time of his release he received and signed the Conditions of Release. (See Government's Exhibit 1).  He also reported to his probation officer after his release from prison and signed for and received another copy of the Conditions of Release. (See Government's Exhibits 1 & 4)

Robie testified that if the individual referred to by Mr. O'Terry was in fact the Defendant that he had violated condition #7, which prohibited association with convicted felons or people engaged in criminal activity, and condition #4, which required the defendant to obey all Federal and State laws.

Robie testified that he and other officers went to the front desk to try to determine who was registered in room 416 and determined that it was Angela Graves but before they could go up to room 416 Mr. Robie saw Donnell Alston walking down the hall of the hotel and toward an exit.

Mr. Robie and other detectives followed Mr. Alston out of the hotel and detained him in the parking lot.  Detective Napier testified that he did follow Mr. Alston out of the hotel and spoke with him as they exited the hotel.  Napier stated that he knew Mr. Alston from prior encounters.  He stated that he was not under arrest or handcuffed and that when he asked him

-3-

what he was doing at the hotel Mr. Alston responded that he was staying at the hotel.

Officer Robie testified that he heard Donnell Alston state that he was staying at the hotel and that caused him concern because he knew that Mr. Alston had a residence in Fort Smit and that caused him to believe that Alston had violated Condition of Release #3, which required a parolee to report a change of address to his parol officer as well as a violation of condition number 4 and 7.  Mr. Robie testified that he then conducted a search of  Mr. Alston and discovered a large amount of cash. He could not remember the specific amount but it was a sufficient quantify to cause concern for Mr. Robie.  During further conversation with the officers it appears that the Defendant stated that he was staying in room 416.

Officer Robie ordered that the Defendant be detained while he and officer Lawson went to room 416 to conduct a search pursuant to his search powers as a parole officer.  Officer Robie and officer Lawson did proceed to room 416 and were met by Ms. Graves.   Graves acknowledged that Donnell Alston was staying there and Robie announced his intention to search the room.  Officer Robie began conducting his parole search and almost immediately found a large amount of crack cocaine in the bedroom. At this time, the officers, who were waiting with Alston in the parking lot, were advised as to what had been found and placed Alston under arrest. Alston was transported to the police department while Officer Robie and the other officers completed a search of the room finding additional controlled substances and drug paraphernalia. (See Government's Exhibit 7)

After the search of the motel room was concluded, Officer Greg Napier interviewed Alston at the Fort Smith Police Department. Officer Napier advised Alston of his Miranda rights using a written form. Alston signed and initialed the Miranda form acknowledging that he

-4-

understood his rights and agreeing to be interviewed. (See Government's Exhibit 5) Alston admitted that all the drugs and drug paraphernalia in the motel room was his and admitted he had been selling the drugs. Napier admitted that the interview was not taped or video recorded but that he did make notes on the back of the rights form of what the defendant said during the interview. (See Government Exhibit 5, 2nd page)

**Discussion:**

"[U]nder our general Fourth Amendment approach" we "examin [e] the totality of the circumstances" to determine whether a search is reasonable within the meaning of the Fourth Amendment. *Samson v. California,* 547 U.S. 843, 126 S.Ct.2193, 2197 (2006)(citations omitted). Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."

A probationary search pursuant to a search condition intrudes less upon protected privacy interests. "[P]robationers do not enjoy the absolute liberty to which every citizen is entitled." Knights, 534 U.S. at 119, 122 S.Ct. 587. (internal quotations omitted). And when a probationer consents to a search condition, his already-reduced reasonable expectation of privacy diminishes significantly. Id. at 120, 122 S.Ct. 587.

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

-5-

An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.   Arkansas Rules of Criminal Procedure, Rule 3.1

Mr. O'Terry had been lawfully stopped and a quantity of drugs and money were found on his person. Mr. O'Terry gave a statement to the police and parole officer that he had gotten the drugs from "DA" in room 416.  The police and parole officer had a suspicion that the "DA" might be Donnell Alston and as they were going to the desk to check on the occupancy of room 416 they observed Donnell Alston leaving the hotel.  At the time the police observed Mr. Alston in the hotel within minutes after Mr. O'Terry had stated he had obtained his drugs from "DA" raised the suspicion to a reasonable level and gave the officers a basis to initiate an investigative stop under 3.1. As part of the investigative stop Mr. Alston informed the officers that his reason for being at the hotel is that he was staying there and that he was in room 416.  When Mr. Alston divulged that he was in room 416 the officer's suspicion was confirmed and Mr. O'Terry information was corroborated.

Officer Robbie and officer Lawson then went to room 416 and they verified from Ms. Graves that Donnell Alston was living in that room and the room was searched pursuant to the Conditions of Release #10. (See Government's Exhibit 3)

Officer Robie testified that he found the drugs within a few minutes (see Government's Exhibit 7) and officer Lawson  radioed officer Napier to place Donnell under arrest.  Officer Robie and officer Lawson both testified that the time from the investigate stop of Mr. Alston the

his arrest was less than five minutes.  This is well within the time contemplated by the rules and is certainly reasonable.

A parole search is unlawful when it is nothing more than a ruse for a police investigation. *See id.; United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994) (probation search); *United States v. Coleman,* 22 F.3d 126, 129 (7th Cir.1994); *Shea v. Smith,* 966 F.2d 127, 132 (3d Cir.1992); *United States v. Cardona,* 903 F.2d 60, 65 (1st Cir.1990). Parole and police officers may work together, however, provided the parole officer is pursuing parole-related objectives and is not merely a "stalking horse" for the police. *See Harper,* 928 F.2d at 897. *U.S. v. McFarland,* 116 F.3d 316, 318 (C.A.8 (Mo.),1997)

It cannot be said that the detention and arrest of Mr. O'Terry was a ruse.  Officer Robie testified that O'Terry was already in violation of his probation and that he was notified by the Fort Smith Police Department that they had located him and that he was suspected in dealing drugs.  Mr. O'Terry, being located at the hotel and fleeing from the police, was arrested. His arrest led the officers, through the course of their investigation to the arrest of Mr. Alston.  All of the officers actions were within constitutional limits.

After the Defendant's arrest he was transported to the Fort Smith Police Department. Officer Napier testified that he read the Defendant his rights on April 22, 2009 at 4:33 P.M.  (See Government's Exhibit 5) He stated that the Defendant understood his rights and that he waived his rights and gave a voluntary statement.

A defendant's statements after being advised of his Miranda rights may be used against him if he knowingly and voluntarily waived his rights. *Missouri v. Seibert*, 542 U.S. 600, 608 n. 1, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)). "A waiver is 'knowing and intelligent' where it

-7-

is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). The totality of the circumstances inform whether a "defendant's will was overborne," making his statement involuntary. *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006); *U.S. v. Bell*, 477 F.3d 607, 612 (C.A.8 (Ark.),2007).

There is no evidence that the Defendant did not knowingly and voluntarily waive his rights and no evidence to suggest that the defendant's will was somehow overborne by officer Napier.  Officer Napier did admit that he did not video or audio tape the statement but that he made notes of the  statement on the back of the rights form.  Officer Lawson also testified that this was the general practice in the narcotics division for the Fort Smith Police Department. There is nothing in the law that requires a police officer to make a video or audio tape of a statement and that circumstance goes to the weight and credibility that the fact finder wishes to attach to it.

**Conclusion:**

I recommend that the Motion to Suppress be denied for the reasons stated above. The parties have **ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court**.

AO72A
(Rev. 8/82)

IT IS SO ORDERED this 25th day of September 2009.

_____     /s/ *J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)