IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA | PLAINTIFF/RESPONDENT |
| V.   No. 2:09-CR-20034-001 | |
|      No. 2:12-CV-02072 | |
| DONNELL LE-RON ALSTON | DEFENDANT/PETITIONER |

### REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, *See ECF No. 66* filed April 3, 2012 , under 28 U.S.C. §2255. The Government filed its Response, *See ECF No.* 68 on April 27, 2012. An Evidentiary Hearing was conducted on November 29, 2012.

### I. Background

On April 28, 2009, a two-count criminal complaint was filed against Donnell Le-Ron Alston charging him with (1) knowingly possessing with intent to distribute cocaine base in violation of 21 U.S.C. ' 841(a)(1) and (2) knowingly possessing with intent to distribute cocaine in violation of 21 U.S.C. ' 841(a)(1). (ECF No. 1). Alston was arrested that same day.

On April 29, Alston appeared with appointed counsel, Jack Schisler, before the Honorable James R. Marschewski for his initial appearance. (ECF No. 2). During his initial appearance, Alston waived the issues of probable cause and detention.

On June 11, 2009, Alston was indicted on one count for knowingly possessing with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A)(iii) and one count for knowingly possessing with intent to distribute cocaine in

-1-

violation of 21 U.S.C. ' 841(a)(1). (ECF No. 6).

Alston was arraigned on June 29, 2009, entered a not guilty plea, and jury trial was set for July 29, 2009. (ECF No. 7).  On July 16, 2009, Alston filed a Motion to Substitute Attorney and Motion for Continuance. (ECF No. 13). The Court granted both motions allowing Naif Khoury to replace Jack Schisler as counsel and reset the trial to September 29, 2009. (ECF No. 14). On September 28, 2012, the United States filed an Information to seek enhancement pursuant to 18 U.S.C. ' 851(a). (ECF No. 32).

Jury trial was held on September 29 - 30, 2012.  (ECF No. 40 & 41). At the conclusion of the trial, the jury found Alston guilty on Counts 1 and 2.(ECF No. 42).

On November 16, 2009, Alston filed a request for Franklyn Mickelson to be admitted to represent him pro hac vice. (ECF No. 47). The Court granted Alston's request that same day. (ECF No. 48).

A Presentence Investigation Report ("PSR") was subsequently completed on December 9, 2009, and submitted to the District Court. Neither the United States nor Alston offered objections to the PSR.  At the sentencing hearing held February 23, 2010, Alston appeared with counsel, Mr. Mickelson. (ECF No. 51). No other objections were raised by the parties. The Court explained the statutory penalties and concluded that paragraph 51 of the PSR, mandatory life imprisonment, was appropriate. (Sent. Tr., pp. 401 - 402). Mr. Mickelson agreed that apart from ruling the statute unconstitutional the Court had no choice but to sentence Alston to life imprisonment. (Sent. Tr., p. 403). Mr. Mickelson also stated his concerns that despite Alston knowing if he went to trial he could be eligible for life imprisonment, that Alston did not realize it would be an automatic life sentence. (Sent. Tr., p. 403). The District Court sentenced Alston to

life imprisonment on Count 1 to run concurrently with his sentence of 20 years imprisonment on Count. (ECF No. 53). Alston was also given 10 years supervised release on Count 1 to run concurrently with his 3 years supervised release on Count 2. (Id.). Alston was further given a $5,000 fine and $200 special assessment. (Id.).

Alston filed a timely notice of appeal on February 25, 2010. (ECF No. 55). On appeal, Alston argued the District Court erred in denying his motion to suppress, the District Court erroneously limited his cross-examination of Detective Napier, the District Court erred in fining him $5,000 without assessing his ability to pay, and that his life sentence was unconstitutional because the District Court, not a jury, determined the existence of his prior convictions. *United States v. Alston*, 626 F.3d 397 (8th Cir.2010). In its opinion filed December 6, 2010, the Eighth Circuit affirmed the judgment of the District Court. Id. at 406. The Eighth Circuit's mandate affirming the District Court's decision was filed on December 27, 2010. (ECF No. 63).

Thereafter, on March 11, 2011, Alston petitioned the Supreme Court for a Writ of Certiorari. (ECF No. 64). Alston's Petition for a Writ of Certiorari was denied by the Supreme Court on April 6, 2011. (ECF No. 65).

On April 3, 2012, Alston filed the instant pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 66) contending that his attorney was ineffective for 1) failing to file a motion to dismiss the Indictment due to a violation of the Speedy Trial Act;  2) for providing bad advice regarding the sentence he could receive if he went to trial; 3) for failing to interview David Oteri and Angela Groves before the beginning of his trial; and 4) for failing to object to the introduction of testimonial hearsay.  (ECF No. 66-2, p. 3)

On August 24, 2012 the court entered an order (ECF No. 70) appointing the Public Defender to represent the Petitioner and scheduling the matter for an Evidentiary Hearing which was conducted on November 29, 2012.

## II.  Discussion

### A.  Ineffective Assistance of Counsel:

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

**B. Asserted Grounds**

    **1. Violation of the Speedy Trial Act**

The Defendant first contends that his retained attorney was ineffective for failing to file a motion with the trial court for a violation of the Speedy Trial Act. The Speedy Trial Act dictates

that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges." However, if "an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days." 18 U.S.C. § 3161(b).

The statute is not permissive but mandatory and clearly reads that if the arrest occurs during a time when no grand jury is sitting the time "shall" be extended for an additional 30 days. It is undisputed that the Defendant was arrested on the Federal charges on April 28, 2009. It is also undisputed that no Grand Jury was in session at the time of his arrest therefore the Government had until June 27, 2009 to indict the Defendant. He was indicted on June 11, 2009 (ECF No. 6) well within the statutory time limit. The Defendant's argument is as meritless now as it would have been in 2009. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.,* 905 F.2d 218, 219 (C.A.8 (Minn.),1990)

**2. Plea Advice**

The Defendant next contends that his retained counsel provided him "bad advice" on the amount of time he could receive if he went to trial. (ECF No. 66-2, p. 4).   The Defendant was appointed counsel and an Evidentiary Hearing was conducted on this issue on November 29, 2012. In the Order appointing counsel the court stated that it felt the record was sufficient to resolve all issues raised in the 2255 motion except the issue concerning plea advice. The court did allow the appointed attorney to expand the evidentiary hearing if he felt he needed too.  No request to expand the hearing was made and the hearing consisted only of testimony only on the

issue of plea advice.  At the hearing Donnell Alston, Roshaun Terry, and Naif Khoury testified.

      The Supreme Court has repeatedly emphasized that the effectiveness of legal representation afforded criminal defendants is to be appraised by normative legal standards which, when applied in a specific factual context, yield a resolution concerning whether a particular defendant received constitutionally adequate assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings. His advice, however, must be "within the range of competence demanded of attorneys in criminal cases." [FN7] *McMann*, supra, at 770-71, 90 S.Ct. at 1449. *U. S. ex rel. Healey v. Cannon*  553 F.2d 1052, 1057 (C.A.Ill. 1977).

    Donnell Alston testified that he was charged in the Western District of Arkansas with two drug charges. Court I possession of cocaine with intent to deliver and Court II possession of powder cocaine. He received his first plea offer when represented by the Public Defender which was to plea guilty to Count I and face a sentence range of 10 years to life. The Government agreed to drop  Court II.  Mr. Alston subsequently hired Naif Khoury to represent him and Mr. Khoury initially relaid the same offer.

    Alston testified that he did not know that if I was convicted he would receive a Mandatory Life sentence but thought it was up to the Judge (00:31:36).   The Defendant testified that he thought he was looking at a 22 year and 10 months or 21 year 10 months versus the low end of the range without acceptance which was 30 years. (00:31:56).   The numbers he believed

he was dealing with was an 8 year range not mandatory life. (00:32:13). Mr. Alston contends that he was not aware of the Mandatory Life Sentence until he received his PSR. (00:32:26). The Defendant testified that If I had know that I was looking at the difference between 22 years and 10 months and life (Mandatory Life) in prison it would have affected my decision and that he would have plead guilty. No doubt. (00:34:04). Donnell Alston's testimony was consistent throughout his testimony that he never was informed that if he was convicted at trial the court would have to sentence him to a Mandatory Life sentence.

      Mr. Khoury was called by the Government to testify about his representation of Mr. Alston. After testifying that he had extensive criminal experience in both state and federal court the AUSA and Mr. Khoury had the following exchange:

> AUSA: Now, the issue I want to direct your attention to is what your advice to him was with regard to whether if the Government filed an enhancement he would be looking at a mandatory life imprisonment. Can you just tell the judge what your advice in that regard was.
>
> Mr. Khoury: Initially, after the arraignment we would wait, as I did with Donnell, to see what the Government had and I would give him as much information as I could and he would make the major decision. (01:40:11).

Notwithstanding the above response Mr. Khoury ultimately testified that he had no doubt that he advised Mr. Alston that he was facing a mandatory life sentence if he went to trial and lost. (02:15:01). The issue in the present case is whether Mr. Khoury adequately explained to Mr. Alston the consequences of a statutory Mandatory Life Sentence.

      If this were a question of only the Defendant's testimony verses the attorney's testimony the court would have a simpler matter before it, but, a number of key documents were introduced during the hearing which need to be weighed, and the court will address these documents

separately.

### a. September 16, 2009 Memo (Defendant's Exhibit 1 and 1A)

On September 16, 2009 AUSA Matt Quinn sent a three page fax to Mr. Khoury. The first page of the fax was the cover sheet from Mr. Quinn and the next two pages were copies of 21 U.S.C. §841. (See Defendant's Exhibit 1 and 1A). Mr. Khoury made notes on the fax cover sheet from Mr. Quinn but did not show this page to the Defendant. Mr. Quinn had underlined the relevant portions of the statute and Mr. Khoury made notes in the margin. Mr. Alston testified that he did not remember if Mr. Khoury read the underlined portion to him but he admitted that he read them. On page three of the exhibit the underlined portion provides that:

If any person commits a violation of this subparagraph or ..... of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release...

In the left hand margin a handwritten note states "Maybe up to life". Mr. Alston testified and Mr. Khoury admitted that Mr. Khoury wrote the note. Mr. Alston admitted that he understood what the term mandatory meant but Mr. Khoury was explaining that it was something the judge could do and he denied that Mr. Khoury ever told him he would get a mandatory life sentence if he went to trial and lost. (00:14:54).

Mr. Khoury testified as follows:

> AUSA: Then, on the next page, which is the third page of the exhibit, you have underlined a section that deals with... the mandatory term of life imprisonment without release. Now, did you go over that with him and explain how he could be subject to a mandatory term of life imprisonment without release. (01:45:51).
>
> Khoury: Yes, I wrote down "may be up to life".

   AUSA: But, that section there, Mr. Khoury, is that correct, that is the provision that if the government proves two or more prior felony convictions would result in a mandatory term of life imprisonment.

   Khoury: That section says life imprisonment without release.

   AUSA: Did you...You underlined that and did you go over that with your client.

   Khoury: Yes. I would have to. I don't have a specific recollection of every word that was said. (01:46:23)

   On cross examination Mr. Khoury admitted that he had some health issues subsequent to the trial and that his memory at the time of the evidentiary hearing was certainly not as good as prior to his health issues. He did testify that he did not believe that he copied the first page of the exhibit which was the fax cover sheet from Mr. Quinn. (02:34:17). Mr. Khoury initially testified that he would have written the notation "Maybe up to life" if it was written in green ink. (02:37:19). At the time he was looking at Exhibit 1 which was a photo copy. Exhibit 1A is the original and shows that the notation is in green ink. He did acknowledge that it looked like his handwriting. It is undisputed that Mr. Khoury made the notation in the left hand margin. Mr. Khoury testified that the term "Mandatory Life" and Maybe Life" could mean different things. (02:37:57). He admitted that the writing could cause confusion but stated that " perhaps the context was if you go to trial". (02:39:06).

   There was never a satisfactory explanation by Mr. Khoury on why he wrote the notation in the left hand margin that the 851 enhancement provision "maybe up to life" particularly in this Defendant's case where there was no question about his criminal history as explained later. The notation in the margin supports the Defendant's claim that his attorney was telling him that the mandatory life provision was discretionary with the judge.

### b.  September 18, 2009 Speed Letter (Plaintiff's Exhibit 1)

On September 18, 2009 Matt Quinn sent a Fax to Mr. Khoury with a copy of the Information to Seek Enhancement Pursuant to Title 21 U.S.C. §851(a). (Plaintiff's Exhibit 1). Mr. Khoury's Speed Letter is dated September 18, 2009 at 1640 hours.  He did not remember if he went to the jail on that day or at another time but it is clear that he visited with the Defendant on September 20, 2009 at 9:00 PM because it bears the Defendant's signature on that date and time. (Id., p., 1). Mr. Khoury testified that he went over the memo with the defendant and  circled the items noted on in Information to Seek Enhancement. (Id., p. 3-4). The following exchange then occurred between the AUSA and Mr. Khoury:

> AUSA: With regard to paragraph five[1], and I guess that is the main thing, explain your circles and what you advised him out of paragraph of this information.
>
> Khoury: Well we would have talked about....they are going to file it, that's the prosecution, and, that I would interpret what the language means.  Exposure means **this is what could** (emphasis added) happen, and then I would clarify the terms such as mandatory and without release.  I would circle mine and, as if I was a teacher, I would probably circle his too, unless he did it himself and I don't know that he did or not and I can't see that he did. (01:54:19).
>
> AUSA: Okay, so you circled statutory  exposure, and then increased to a mandatory term of life imprisonment without release.  Is that what you advised him **would** (emphasis added) happen if the government filed this enhancement.
>
> Khoury: That **it could happen** (emphasis  added), if he is found guilty.
>
> AUSA: If he were found guilty.  OK, and the could relates to whether or not he was convicted or not, but, if he was convicted he would be looking at a mandatory term of life imprisonment without release.

---

[1] Paragraph Five provided: "The United States respectfully submits this information is the formal notice of its intention to seek the statutory enhancement provisions pursuant to Title 21 U.S.C. §851(a).  The defendant's statutory exposure with this enhancement is increased to a mandatory term of life imprisonment without release."

      Khoury: It's right there and I believe I would adequately explain.

Mr. Khoury would consistently use the argument that a mandatory life sentence could happen and then try to explain that the "could" was contingent on his being found guilty. There was no explanation by Mr. Khoury on why a Mandatory Life sentence could happen if the Defendant was found guilty. In this particular case there was no question that, once the enhancement was sought, Mr. Alston would be sentenced to a mandatory life sentence. Mr. Khoury testified that he remembered going over the convictions with the Defendant but he could not remember if he disputed any of the convictions. (01:52:29).

When the court inquired of Mr. Khoury as to his knowledge of the Defendant's convictions he stated that " I did not put down that he denied them or admitted them we simple went on to the other parts of the document because that was the natural progression." Then the following exchange occurred between Mr. Khoury and the Court:

      Court: But isn't that going to be important to you because if he admits those convictions hasn't the AUSA made his case. If he gets a conviction he has nothing else to do.

      Khoury: That's correct.

      Court: So, if your client admitted those convictions to you didn't you know that if he was convicted at trial that it was only going to be a mandatory life sentence.

      Khoury: I believe I expressed that to him. I believe he knew it but I don't recall if he positive this item was a conviction, this item was a conviction.

      Court: Why didn't you press that point. Isn't that important for you to know.
      Khoury: I may well have done it but I didn't memorialize it.

It is inconceivable that Mr. Khoury did not know that the Defendant had two or more

conviction. During redirect examination he admitted that the Defendant was on parole and that he had filed a Motion in Liminie to keep out references to his parole at trial. (ECF No. 24). Mr. Khoury also acknowledged that the Defendant's criminal history would have been presented in his PSR report at his arraignment and testified that he had only previously been exposed to state court. Mr. Alston also testified that Mr. Khoury asked him about his convictions and that he confirmed they were his convictions.

Mr. Alston testified that when he read paragraph 5 that calls for a mandatory life sentence Mr. Khoury was still telling him "maybe, that it is up to the judge's discretion." He told me that he had never seen the judge do it before. (00:57:39). He never told me that the judge would give me a mandatory life sentence. He just said the judge could do it. (01:00:41).

There can be no question that if the Government pursued the Enhancement provision of §951 the Defendant **would** be sentenced to a Mandatory Life sentence. There was no "could" about it. Mr. Khoury's use of the word "could" in both his notes and testimony is confusing.

### c. September 24 Jail Visit (Defendant's Exhibit 3A)

Mr. Khoury received a telephone message from Matt Quinn on September 24, 2009. Mr. Khoury was unsure but believed that the notes on Defendant's Exhibit 3A pertain to September 24, 2009. The most confusing aspect of the note is the third line which reads:

filed Notice of career criminal – life w/parole

✓

Mandatory, judge will

do it or not.

When the Defendant first read this line he read it as life without parole. He subsequently

-13-

changed his reading to life with parole.  Mr. Khoury also read it as life with parole but noted that there was a dot the lower right of the slash mark and that could have been a poorly formed "o", but he admitted that it appeared to read life with parole. On cross examination he admitted that it read life with parole and that was incorrect and that there was no parole in the federal system. (03:02:26).  When asked to explain "mandatory–judge will do it or not" Mr. Khoury stated that "judge will do it or not means that there are other things like if he co-operates and becomes a snitch he gets consideration even after he is sentenced. I am not saying he could get a reduction. Looking at it now they do say two different things."  Subsequently on the page Mr. Khoury notes that "– they said , Dawson did life w/o parole before".

     It is impossible to reconcile either the handwritten notes or the testimony to a statutory mandatory life sentence.  Mr. Khoury's note in explaining the mandatory sentence clearly states that the "judge will do it or not". Obviously the judge would have no discretion if it was a statutory mandatory life sentence and the court expressed that very point to the Defendant at sentencing.

     Mr. Alston testified that he understood that the mandatory life sentence was up to the judge.  "That was the understanding I had when making my decision whether to plea guilty or not. (00:31:39).  I thought I was looking at a 21 year, 10 months sentence or a 22 year, 10 month sentence versus the low end of the (guideline) range which was 30 years. An 8 year range.  I was not looking at Mandatory Life.  I was not aware of that until I received my PSR because of the 851 enhancement."  (00:32:59) (Defendant's Exhibit 3A).

     This exhibit also contained a note that states "I figure judge will let him plead – gets 21 years/ 10 months.  That is the statutory minimum.  When asked about this at the hearing the

following exchange took place.

>Schisler: Isn't that a guideline reference.  Are the guideline ranges different than the statutory penalties.
>
>Khoury: We didn't go into that.

It is difficult to imagine where there could be any more need for clarification than between the guideline range of 21 or 22 years and a statutory Mandatory Life sentence.

### d. September 25 Jail Visit (Defendant's Number 4, Plaintiff's Number 2).

On September 25th 2009 Mr. Khoury got another fax from Matt Quinn (Defendant's Exhibit 4, p. 2).  The fax cover sheet shows that it was page 1 of 24 pages.  The Exhibit only consist of one page of notes dated September 25 (Id., p. 3) and a letter from Mr. Khoury to Mr. Alston dated September 23, 2009 but indicating that it was hand delivered (Id., pp. 4-5).  The notes indicate that the prosecution was still willing to offer to "recommend 22 years, 10 months to judge" and that parole was up to "Federal detention".  Mr. Khoury noted "as your attorney I recommend you accept offer to avoid career criminal enhancement and allow you a chance at a downward departure".  The note indicates, and the testimony confirms, that the jail meeting began at 12:30 and at 1 PM the Defendant could not make a decision.  By 3:15 PM the Defendant indicated that he wanted a trial.

### e. Roshaun Terry Letter dated February 1, 2010 (Defendant's Exhibit 5)

Roshaun Terry testified that he was on similar charges to Mr. Alston and had a similar criminal history and that he also was represented by Mr. Khoury who had been appointed for him. (See Case Number 2:09-cr-20073). Mr. Khoury had received a fax from Mr. Quinn which informed him that if Mr. Terry proceeded to trial he would seek the "statutorily mandated

sentence of life imprisonment without release if convicted". (Defendant's Exhibit 5, p. 3). Mr. Khoury wrote Mr. Terry a letter on February 1, 2010 which in part stated:

> The prosecutor says if you want to go to trial, then the plea bargain offer extended to you will be withdrawn as soon as you announce that you are going to go to trial. The prosecutor would then file a notice, before trial, saying that if you are convicted, then the government would want a sentencing enhancement, such as a career criminal status, which **could** (emphasis added) result in life imprisonment without release. (Id., p. 2).

Mr. Terry sought out Mr. Alston after he received Mr. Khoury's letter and after Mr. Alston had been sentenced to ask for advice. (01:18:10). Mr. Terry received and identified the letter he received from Mr. Khoury and acknowledged that Mr. Khoury advised him that he "could" receive a mandatory life sentence. (01:23:19). He and Mr. Alston were in the Sebastian County Jail together and had already been sentenced by the time Mr. Terry could speak with him. (01:23:29). He knew that Mr. Alston had received Life Without Parole, Mr. Terry testified that Mr. Alston was "shocked" by that sentence (01:23:41) and expressed to Mr. Terry that he did not know he was looking at mandatory life until after he was sentenced (01:23:55). Mr. Terry wrote Mr. Khoury a letter on March 3, 2010 telling him that he wanted to take the deal and not go to trial. (ECF No. 34-1). On March 4, 2010 Mr. Khoury filed a Motion to Withdraw (ECF No. 34; Defendant's Exhibit 6) claiming a loss of confidence by his client. No ruling on the Motion was made but Mr. Terry entered a plea on March 11, 2010 (ECF No. 37) and was sentenced to 175 months consecutive to his state court charges. (ECF No. 54).

Mr. Terry testified that he had 4-5 prior criminal convictions. (01:30:17). The letter from Mr. Quinn to Mr. Khoury dated January 28, 2010 states that "based on Mr. Terry's criminal history which includes 3 prior drug trafficking convictions, it is my opinion he will be classified

as a career offender pursuant to § 4B1.1 of the Sentencing Guidelines.

The Court finds this letter very persuasive and supportive of the Defendant's position. It is obvious that Mr. Khoury should have know that Mr. Terry would qualify as a career criminal and be subject to the 851 enhancement and the letter was written after Mr. Alston's trial. There is nothing in the Terry letter that says that if convicted it is unquestioned that Mr. Terry would get a life sentence, or that this is a statutory provision that divest the judge of any discretion. The letter clearly states that "if" he is convicted he "could" receive life imprisonment without release. This is the same language Mr. Khoury used in his discussions with Mr. Alston, the notations that he made, and his own testimony at the hearing.

The Court believes that where the Government seeks the second most severe punishment it can impose upon an offender there should be clear and unequivocal communication to the Defendant that if he chooses to go to trial and is convicted he **will** be sentenced to a mandatory life sentence with no chance for release. If that happened in this case it is not documented and the evidence is in favor of the Defendant.

### 3. Failure to Investigate

The Defendant contends that his attorney was ineffective for his failure to interview certain witnesses.

a. Oteri

The Plaintiff first contends that David Oteri should have been interviewed and submitted an Affidavit by his wife that Mr. Oteri was willing to be interviewed. (ECF No. 69-5). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have

testified are largely speculative.*" Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978).

      b.  Groves

The Plaintiff also contends that his attorney failed to interview Angela Groves prior to trial and if he had done so he contends that her testimony concerning the origin of $600 found in her purse "contradicted statements Petitioner gave Khoury about what occurred on April 22, 2009 as he was leaving the hotel." (ECF 62-2, p. 6). There is no indication as to what the Petitioner believes the pre-trial interview would have discovered or how that would have changed the outcome of the trial. "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir.1996) (*quoting Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir.1994)).

The Petitioner has failed to produce any affidavit of any witness he claims that his attorney failed to interview. There can be no showing of prejudice in the habeas context without evidentiary proof as to what the witnesses' testimony would have been. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir.1989).

    **4.  Out of Court Statement**

Finally, Alston argues that his counsel was ineffective in failing to object to testimony of Parole Officer Robie who referred to an informant's, David Oteri, out-of-court statement when he stated "Oteri said that he was interacting with an individual in Room 416 and that he knew this individual by the initials D.A."

The Defendant contends this violated Crawford v. Washington. Under Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause of

the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross- examination." However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9; *United States v. Brooks*, 645 F.3d 971, 977 (8th Cir.2011). Here, Officer Robie's testimony regarding Oteri's statement was essential in explaining why the police launched the investigation. It explained the fact that led the police to investigate who was staying in Room 416 of the hotel, the questioning of Alston, and the search of the room. The out of court statement was not offered to prove the truth of the matter, but merely helped explain the officers decision to conduct their investigation in the first instance and, thus, it did not implicate the Confrontation Clause. As counsel is not ineffective for failing to make a meritless argument or objection, this claim must fail. *Storey v. Roper*, 603 F.3d 507, 525 (8th Cir.2010); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.1994).

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be granted on Ground Two (2), Plea Advice, because the Defendant's attorney was ineffective in failing to give proper advice concerning the consequences of rejecting the plea offer made by the Government.

I further recommend that the Motion be denied to the Defendant's remaining contentions being Ground (1), Violation of Speedy Trial, Ground (3) Failure to Investigate, and Ground (4), Out of Court Statement.

**The parties have fourteen days from receipt of this report and recommendation in**

**which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

       IT IS SO ORDERED this 14th day of December 2012

                                            /s/ J. Marschewski
                                        HONORABLE JAMES R. MARSCHEWSKI
                                        CHIEF U. S. MAGISTRATE  JUDGE